Judgment rendered December 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,003-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ESTATE OF CHARLES HILL                     Plaintiff-Appellant

versus

ELIJAH WILLIAMS                            Defendant-Appellant

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2023CV01552

Honorable Angie D. Sturdivant, Judge

* * * * *

ELIJAH WILLIAMS                            In Proper Person,
                                           Defendant-Appellant

DON HILL                                   In Proper Person,
                                           Executor, Plaintiff-
                                           Appellant

* * * * *

Before PITMAN, COX, and ROBINSON, JJ.

**ROBINSON, J.**

Elijah Williams appeals a judgment ordering him and his construction company to return $5,138.07 to the Estate of Charles Hill ("Estate") for remodeling work that was left unfinished. For the following reasons, the judgment is affirmed.

**FACTS**

Donald Hill ("Hill"), a son of the late Charles Hill, contacted Elijah Williams on July 14, 2022, concerning basement flooding and an overflowing septic tank at a home owned by the Estate. The home, located on Buckhorn Bend Loop Road in Monroe, was rented by the Justice family. Approximately 8,000 gallons of water were pumped from the basement.

The Estate made a claim against its homeowner's insurer, State Farm. On August 24, 2022, State Farm issued a check to Hill in the amount of $5,241.00.

Williams' construction business, Eli's Home Improvement, LLC ("Eli's"), prepared an estimate for debris removal and remediation of the damage caused by the flooding. This included the removal and replacement of flooring, baseboards, and sheetrock to a height of 12-18 inches. The estimated cost was $22,234.91. On September 12, 2022, the Estate wrote a check for $12,673.04 to Eli's, with a balance of $9,561.87 due upon completion.

Williams began working on the home on September 15, 2022. On October 23, 2022, Hill met with Williams at the home to check on his progress. Unfortunately, Hill and Williams were involved in an altercation

with members of the Justice family. Hill told Williams to cease working on the home.

Williams resumed working on the house in February of 2023. After discovering what he thought was black mold in March, Williams stopped working on the house until the mold could be removed.

On August 18, 2023, the Estate filed suit against Williams seeking to recover $17,673.04 plus court costs. The Estate complained that it had paid for work that was not completed.

A bench trial was held on September 28, 2023. The petition was amended to add Eli's as a defendant. Hill testified that Williams took up the flooring but did not replace it. He further testified that Williams did additional work involving the walls that he was not authorized to do. Hill explained that he was seeking the return of what he had paid Eli's as well as $5,000.00 in damages incurred when Williams removed sheetrock from the walls without authorization.

Williams testified that after he discovered mold in the fall of 2022, he prepared a supplemental claim for State Farm. State Farm wrote an updated estimate on October 15, 2022. According to Willians, Hill told him that State Farm denied the supplemental claim, but Williams later learned that State Farm had approved it.

Williams testified that when he told Hill in 2022 that he may need to remove additional sheetrock, Hill responded that whatever the Justices wanted done was fine with him. The removal of the sheetrock exposed wooden walls that he refinished at the request of the Justices. Williams

2

estimated that this additional work cost $17,290.00. Hill denied authorizing Williams to do this additional work.

Williams recalled that after the October altercation with the Justices, Hill ordered him to stop working on the house. On January 22, 2023, Hill told Williams not to resume work on the house. Nevertheless, Williams began working on the house again in February. He finished laying the dining room floor in March. After cleaning the wood flooring in the master bedroom, he resumed working on the kitchen floor but stopped when he removed the subflooring and discovered what he thought was black mold. Williams admitted that $5,138.07 in work remained undone under the original agreement.

Reggie Justice testified that Williams completed the floors in the dining room. He also testified that Williams had removed sheetrock and stained some of the wooden walls.

The trial court noted the conflicting testimony about what work had been completed. The court found Williams to be more credible than Hill concerning the extent of the work done. Williams had photos of the new flooring as well as receipts for the purchases of the new flooring. Justice corroborated Williams' testimony about purchasing and replacing flooring. The court found Justice to be credible.

Williams testified that he performed additional work to remove sheetrock and refinish walls. However, the court found that Hill had not authorized this additional work.

3

The court determined that Williams had completed $7,534.97 of work under their agreement. This left a remaining balance of $5,138.07. The court ordered the defendants to return that amount to the Estate.

The court rendered judgment in favor of the Estate and against Williams and Eli's in the amount of $5,138.07. Each party was to bear its own costs. The Estate and Williams have appealed the judgment. The Estate, which was not represented by counsel at trial, did not file a brief. Williams, who was also not represented by counsel at trial, has filed a brief.

**DISCUSSION**

Williams first argues that the trial court erred in rendering judgment against Eli's. There is no merit to his argument as the petition was amended, without objection from Williams, to add Eli's as a defendant.

Williams next argues that the cost of the flooring that he completed was $15,568.87, and that the original check paid to Eli's was $12,673.04, leaving an unpaid balance of $2,895.83. He argues that the trial court erred in not ordering the Estate to pay that amount. This argument is also without merit.

To reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993). Even if an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Cole v. State Dept. of Public*

4

*Safety & Corr.*, 01-2123 (La. 9/4/02), 825 So. 2d 1134; *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989). Moreover, where the factfinder's conclusions are based on determinations regarding the credibility of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Rosell*, *supra*.

The court found Williams to be more credible than Hill concerning what work had been done. We note that Williams answered in the affirmative when he was asked by the trial court if he was claiming that he had completed $7,534.97 of work under the original estimate, leaving $5,138.07 in work remaining to be done. In addition, the record supports the trial court's rejection of any claim for compensation for the additional work which had not been authorized by Hill.

## CONCLUSION

The judgment is affirmed. Each party is to bear his own costs of this appeal.

**AFFIRMED**.

5